IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA HASTINGS, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>  v.<br><br>TD BANK, N.A.,<br><br>                  Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joshua Hastings ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against TD Bank, N.A. ("TD Bank" or "Defendant"), based upon personal knowledge with respect to himself, and on information and belief and the investigation of counsel as to all other matters, in support thereof alleges as follows:

## NATURE OF THE ACTION

1. This case arises out of TD Bank's policy and practice of charging its New York customers a fee to receive their account billing statements in paper form via United States mail.

2. Account Statements serve a critical consumer protection function, providing a record of consumers' transactions (including setting forth fees billed and charged to them such as the paper statement fee at issue in this action) and enabling the consumer to check for unauthorized charges or errors.

3. In direct violation of New York law, TD Bank charges a monthly fee in order for its customers to receive a paper billing statement.

4. According to TD Bank's Fee Schedule, this fee is $3 for each paper statement per

statement cycle for general banking.

```
Account Services
Check & ACH Stop Payment (per Item)......................... $ 30.00
Paper statement (per statement cycle)........................... $ 3.00
Paper statement (per statement cycle, TD Essential Banking only) .... $ 1.00
```

5.     TD Bank's conduct is prohibited by New York General Business Law ("GBL") § 399-zzz, and therefore constitutes a deceptive act and practice under GBL § 349.

6.     Accordingly, Plaintiff brings this putative class action on behalf of himself and all other similarly situated New Yorkers, and seeks compensatory damages, statutory damages, and injunctive relief.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of each of the Classes is a citizen of a State different from the Defendant.  The number of members of the proposed Class and Subclass in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

8.     This Court has personal jurisdiction over the Defendant because Defendant's actions and omissions committed in or aimed at this District gave rise to the claims alleged in this Complaint.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

10.     Plaintiff Joshua Hastings is a citizen of New York who resides in Elmhurst, New York.  Since at least 2024, Mr. Hastings has had a checking account with TD Bank, and during that entire period, TD Bank has charged Mr. Melackrinos a $3 monthly fee to receive a paper billing statement, which Mr. Hastings paid.  Each monthly statement that TD Bank sends to its

customers, including Plaintiff, includes any fees charged against the account over the previous billing cycle. A screenshot of the $3 monthly fee to receive a paper billing statement from Mr. Hastings' September 2024 paper billing statement is below:

| Service Charges | | |
|---|---|---|
| POSTING DATE | DESCRIPTION | AMOUNT |
| 09/13 | MAINTENANCE FEE | 15.00 |
| 09/13 | PAPER STATEMENT FEE | 3.00 |

11. Defendant TD Bank is an American national bank and subsidiary of the Canadian multinational Toronto-Dominion Bank. TD is headquartered in Cherry Hill, New Jersey. TD has approximately 1,100 branches in the United States. By assets, TD is ranked in the top 10 among U.S. banks and provides banking services to millions of east coast customers from Maine to Florida.

12. TD Bank has 314 branches in New York and provides banking services throughout the state.

### NEW YORK GENERAL BUSINESS LAW § 399-zzz

13. Effective April 18, 2011, New York enacted GBL § 399-zzz, which provides that companies, like TD Bank, shall not "charge a consumer an additional rate or fee … when the consumers chooses … [to] receive a paper billing statement." GBL § 399-zzz(1).

14. The statute provides that "[e]very violation of this section shall be deemed a deceptive act and practice subject to enforcement under article twenty-two-A of this chapter," i.e., GBL § 349. *Id.* § 399-zzz(2) (emphasis added).

15. As the New York Legislature found "paper billing and payment fees unfairly impact consumers that do not have Internet access in their homes, as well as those that are uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy." *See* NY State Assembly Memorandum In Support of Legislation, attached as Exhibit A.

3

16. Additionally, "[p]aper billing and payment fees disproportionately affect low-income consumers, who are less likely to have access to the Internet." *Id.*

17. "Furthermore, such policies impose an additional burden on those customers who choose to file their billing statements for later reference, as such customers will be forced to bear the cost of printing electronic billing statements on their home printer." *Id.*

18. State Senator Peralta, who sponsored the legislation, set out its purpose as "to prohibit businesses from imposing an additional rate or fee on the account of a cons[umer] who chooses to receive paper billing statements or pay by United States mail."

19. In Senator Peralta's sponsor memorandum, he wrote that the bill would prohibit "any person, partnership, corporation, association or other business entity from charging a consumer an additional rate or fee associated with payment on an account when the consumer selects to … receive a paper billing statement."

20. In justifying the need for the bill, Senator Peralta wrote:

> In recent months, there have been instances of major companies proposing to impose an additional fee on the accounts of customers that choose to receive a paper bill…. Such paper billing and payment fees unfairly impact those consumers that do not have Internet access in their homes, as well as, those that are uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy.
>
> Paper billing and payment fees disproportionately affect low-income consumers who are less likely to have access to the Internet. Furthermore, such policies impose an additional burden on those customers who choose to file their billing statements for later reference, as such customers will be forced to bear the cost of printing electronic billing statements on their home printer.
>
> While the environmental benefits of electronic billing and payment are clear, a better approach to reducing paper use in this area is available. Several major companies have successfully reduced paper usage by offering customers an incentive to switch to electronic billing and payment.

21. In a July 12, 2010 letter to Counsel to the Governor concerning the legislation, the Consumer Protection Board echoed Senator Peralta's sponsor memo, and noted:

> [Although companies save money and provide environmental benefits by issuing electronic statements,] account billing and payment via the United States mail is a long-standing tradition to which many consumers respond to. Electronic mail does not have the same impact with some consumers. More importantly, account billing is a cost of doing business that has been built into a service or product cost. Thus, if a company wants to move its customers to electronic billing, it should do so with incentive based tactics, as this measure provides, and not a broad sweeping fee imposed upon consumers as a penalty for those who prefer or are limited to doing business in the traditional receipt of paper bills.
>
> Accordingly, the [Consumer Protection Board] **strongly supports** this legislation to protect consumers who prefer or are limited to receiving their monthly billing statements via paper billing received via the traditional United States Postal mail system.

(emphasis in original)

## GENERAL ALLEGATIONS

22. N.Y. GBL § 399-zzz is, by its express terms, subject to federal laws and regulation.

23. The National Bank Act ("NBA") authorizes national banks to receive deposits and perform "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24.

24. The Office of the Comptroller of the Currency ("OCC") has the regulatory oversight of national banks' exercise of these federally authorized powers, and Congress delegated to the OCC authority to determine the scope of these incidental powers. See 12 U.S.C. § 93a.

25. The OCC's regulations recognize that "national bank[s] may receive deposits and engage in any activity incidental to receiving deposits … subject to … limitations prescribed by

the [OCC] and any other applicable Federal law." 12 C.F.R. § 7.4000. The OCC regulations urther state that "A national bank may charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a).

26. But the OCC regulations provide that:

> The establishment of non-interest charges and fees … are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. A national bank establishes non-interest charges and fees in accordance with safe and sound banking principles if the bank employs a decision-making process through which it considers the following factors, among others: (i) The cost incurred by the bank in providing the service; (ii) The deterrence of misuse by customers of banking services; (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and (iv) The maintenance of the safety and soundness of the institution.

Id. § 7.4002(b) (emphasis added).

27. Thus, although the OCC regulations generally provide national banks the authority under the NBA to "charge its customers non-interest charges and fees, including deposit service charges," 12 C.F.R. § 7.4002(a), the OCC has limited those charges and fees to those that require "sound banking judgment and safe and sound banking principles." 12 C.F.R. § 7.4002(b). Such limitation appropriately complies with the Supreme Court's multiple comments that state laws of general application are not preempted by the NBA. *See, e.g., Cuomo v. Clearinghouse Ass'n*, 557 U.S. 519 (2009); *Watters v. Wachovia Bank*, 550 U.S. 1 (2007).

28. N.Y. GBL § 399-zzz is a law of "general application." It imposes no special duty on banks (nationally chartered institutions or otherwise). Its mandates apply equally to banks and all other businesses. This is for good reason: the conduct of printing and mailing an Account Statement is not specific to banking (many types of businesses generate Account Statements) and neither requires the exercise of banking judgment nor application of banking principals. Indeed,

6

N.Y. GBL § 399-zzz does not speak to, inter alia, (1) the content or format of Account Statements, or (2) how paper Account Statement fees must be disclosed to consumers. Rather, N.Y. GBL § 399-zzz establishes a prohibition of a specific type of fee charged by all types of businesses, the definition of a law of "general application."

29. TD Bank charges its customers a $3 monthly fee in order to receive the paper billing statement they are entitled to under federal law.

30. TD Bank set the monthly fee at $3 without regard to sound banking judgment and safe and sound banking principles.

31. TD Bank set the monthly fee at $3 without considering the cost incurred by the bank in providing the service. Indeed, TD Bank's Personal Deposit Account Agreement states that "[t]he Paper Statement Fee is charged per Account, not per statement; therefore a combined statement with more than one Account could receive multiple fees."[1]

32. TD Bank set the monthly fee at $3 without considering whether it would deter misuse of banking services by customers.

33. TD Bank set the monthly fee at $3 without considering whether it would enhance the competitive position of the bank in accordance with the bank's business plan and marketing strategy.

34. TD Bank set the monthly fee at $3 without considering the maintenance of the safety and soundness of TD Bank.

35. TD Bank charges consumers with various types of TD Bank accounts a fee to receive their Account Statement in paper form via the U.S. mail.

---

[1] https://www.td.com/content/dam/tdb/document/pdf/personal-banking/personalacctagree-en.pdf (last visited April 25, 2025).

36. TD Bank Account Statements set forth the consumers' electronic deposits and payments, checks paid, daily balances, and the fees that TD Bank charges the consumer, including the TD Bank fee for consumers' receipt of paper Account Statements.

37. TD Bank's Account Statements also reflect the payment of the fees that TD Bank charges consumers via a debited adjustment to their balance.

38. TD Bank's Account Statements thus reflect both fee charges and payments, just as other types of Account Statements (e.g., credit card statements which also reflect that a consumer may be charged a fee and will reflect payments, regardless whether made prior to or after the statement issues).

39. By setting out the fees that TD Bank charges consumers, the Account Statements that TD Bank issues constitute "paper billing statement[s]" under N.Y. GBL § 399-zzz.

40. Therefore, TD Bank's fee charged to consumers for receiving their Account Statements in paper form violates N.Y. GBL § 399-zzz, and each such fee charge constitutes a separate and independent deceptive act and practice that violates N.Y. GBL § 349.

## CLASS ACTION ALLEGATIONS

41. Plaintiff seeks to represent a class defined as all New York residents who were charged a fee to receive their Account Statements in paper form by TD Bank (the "Class").

42. Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

43. Specifically excluded from the Classes are TD Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which TD Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

44. The members of the Classes are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to TD Bank's records.

45. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether TD Bank charged its customers a monthly fee in order to receive a paper billing statement; and (b) whether any such fee(s) constitute a violation of GBL § 399-zzz.

46. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff and the Class sustained damages as a result of TD Bank's uniform wrongful conduct, based upon TD Bank charging its customers a monthly fee in order to receive a paper billing statement.

47. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

48. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish TD Bank's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a

potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of TD Bank's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Deceptive Acts Or Practices, New York GBL § 349
### (On Behalf Of The Class)

49. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the Class against TD Bank.

51. By the acts and conduct alleged herein, TD Bank committed deceptive acts and practices by charging its customers a monthly fee in order to receive a paper billing statement.

52. The foregoing deceptive acts and practices were directed at consumers.

53. The foregoing deceptive acts and practices are misleading in a material way because they constitute an unlawful fee under GBL § 399-zzz.

54. Plaintiff and members of the Class were injured because they were unlawfully charged a monthly fee in order to receive a paper billing statement.  As a result, Plaintiff and members of the Class have been damaged in the full amount of fees they paid to TD Bank in order to receive a paper billing statement.

55. On behalf of himself and other members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A.  Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

C.  Award Plaintiff and the Class their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D.  Grant restitution to Plaintiff and the Class and require Defendant to disgorge their ill-gotten gains;

E.  Permanently enjoin TD Bank from engaging in the unlawful conduct set forth herein;

F.  Grant any and all such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  April 28, 2025                                  Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Philip L. Fraietta*
          Philip L. Fraietta

Philip L. Fraietta
Julian C. Diamond
1330 Ave of the Americas, 32nd Floor
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  pfraietta@bursor.com
            jdiamond@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

**A09541 Memo:**

NEW YORK STATE ASSEMBLY
MEMORANDUM IN SUPPORT OF LEGISLATION
submitted in accordance with Assembly Rule III, Sec 1(f)

**BILL NUMBER:** A9541A

**SPONSOR:** Pheffer (MS)

**TITLE OF BILL**: An act to amend the general business law, in relation to prohibiting an additional fee or rate to be charged in certain circumstances

**PURPOSE OR GENERAL IDEA OF BILL**: This purpose of this bill is to prohibit businesses from imposing an additional rate or fee on the account of a consumer who chooses to receive paper billing statements or pay by United States mail.

**SUMMARY OF SPECIFIC PROVISIONS**: This bill would prohibit any person, partnership, corporation, association or other business entity from

charging a consumer an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper billing statement.

The bill stipulates that its provisions shall not be construed to prohibit a person, partnership, corporation, association or other business entity from offering consumers a credit or other incentive to elect a specific payment or billing option.

Violations would be deemed a deceptive act and practice subject to enforcement under Article 22-A of the General Business Law.

**JUSTIFICATION**: In recent months, there have been instances of major companies proposing to impose an additional fee on the accounts of customers that choose to receive a paper bill or pay by United States mail. Such paper billing and payment fees unfairly impact consumers that do not have Internet access in their homes, as well as, those that are

uncomfortable using the Internet, including many senior citizens and those concerned about personal privacy.

Paper billing and payment fees disproportionately affect low-income consumers, who are less likely to have access to the Internet. Furthermore, such policies impose an additional burden on those customers who choose to file their billing statements for later reference, as such customers will be forced to bear the cost of printing electronic billing statements on their home printer.

While the environmental benefits of electronic billing and payment are clear, a better approach to reducing paper use in this area is available. Several major companies have successfully reduced paper usage by offering customers an incentive to switch to electronic billing and payment.

This legislation would expand upon the provisions of Section 702 of the General Business Law, which prohibit creditors from charging customers

an additional rate or fee when the consumer chooses to pay by United States mail:

**PRIOR LEGISLATIVE HISTORY**: New bill.

**FISCAL IMPLICATIONS FOR STATE AND LOCAL GOVERNMENTS**: None.

**EFFECTIVE DATE**: 180 days after it shall have become a law,