# BURSOR & FISHER
### P.A.

**1330 Avenue of the Americas**
**NEW YORK, NY 10019**
www.bursor.com

June 11, 2025

**JULIAN C. DIAMOND**
Tel: **646.837.7142**
Fax: **212.989.9163**
jdiamond@bursor.com

***By ECF:***

The Honorable Hector Gonzalez
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Hastings v. TD Bank, N.A.*, Case No. 1:25-cv-02336-HG (E.D.N.Y.)

Dear Judge Gonzalez:

I write on behalf of Plaintiff Joshua Hastings ("Plaintiff") pursuant to Rule IV.A of your Honor's Individual Practices in response to Defendant TD Bank N.A.'s ("TD Bank") June 5, 2025 Letter, Dkt. No. 15 ("Ltr."). Plaintiff will oppose TD Bank's forthcoming motion to dismiss.

**I.     Plaintiff's Claim Is Not Preempted By The National Bank Act**

Defendant primarily relies on the argument that "Plaintiff's claim is preempted by the National Bank Act (the "NBA"), which exclusively governs TD Bank's ability to charge non-interest fees on deposit accounts." Ltr. at 2. But Defendant is wrong. "[T]he party asserting that federal law preempts state law bears the burden of establishing preemption." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013). Here, TD Bank cannot meet its burden.

First, any argument for preemption fails because the relevant regulation, 12 C.F.R. § 7.4002(a) is not applicable to the facts of this case. Under that regulation, "[a] national bank may charge its customers non-interest charges and fees, including deposit account <u>service</u> charges." *Id.* (emphasis added). But the paper statement fee that TD Bank charged Plaintiff is not a "deposit account service charge," because TD Bank is required by federal law to provide Plaintiff with a paper billing statement on a periodic basis. *See* 12 C.F.R. § 205.9(b) (requiring periodic billing statements). TD Bank may provide that statement electronically, <u>only</u> if "the consumer has affirmatively consented to such use and has not withdrawn such consent." 15 U.S.C. § 7001(c)(1). In other words, TD Bank is obligated by federal law to provide its customers, including Plaintiff, with a paper billing statement on a periodic basis. Its doing so, therefore, is not a "service," and the paper statement fee is therefore not an "account service charge." Since federal law is silent as to whether TD Bank may charge an additional fee for its customers to receive paper billing statements, there is no conflict between federal and state law. *Compare* 12 C.F.R. § 205.9(b) (silent as to bank's ability to charge fees for periodic statements) *with* 12 C.F.R. § 1005.16(d) (authorizing bank to charge fees for ATM transactions). GBL § 399-zzz therefore controls, and TD Bank's paper billing statement fees are unlawful.

Second, even if 12 C.F.R. § 7.4002 was applicable to the facts of this case, TD Bank's argument for preemption still fails because it cannot meet its burden of showing that it complied with any of the requirements of subsection (b). That is, TD Bank can make no showing that the paper statement fees were "arrived at … on a competitive basis" or "according to sound banking judgment and safe and sound banking principles," as is required by the regulation. 12 C.F.R. §§ 7.4002(b)(1)-(2). Indeed, TD Bank can make no showing that it considered any of the four enumerated factors under § 7.4002(b)(2). See 12 C.F.R. § 7.4002(b)(2)(i)-(iv).

Third, TD Bank's argument for preemption also fails because GBL § 399-zzz is a law of general applicability. It is well-established that "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). Thus, "States are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." *Id.* at 12; *see also Barnett Bank of Marion Cnty, N.A. v. Nelson*, 517 U.S. 25, 33 (1996) (same).

Here, GBL § 399-zzz is a consumer protection law of general applicability. The law is not targeted solely at banks. Rather, it applies to every "person, partnership, corporation, association or other business entity" in New York. GBL § 399-zzz(1). Thus, the law is not preempted by the NBA. *See, e.g.*, *Baldanzi v. WFC Holdings Corp.*, 2008 WL 4924987, at *3 (S.D.N.Y. Nov. 14, 2008) (finding plaintiffs' GBL § 349 claims were not preempted where "the defendant's ability to conduct its banking business is no more than incidentally affected by the requirement that it comply with state laws that apply to all industries and individuals alike"); *Binetti v. Wash. Mut. Bank*, 446 F. Supp. 2d 217, 220 (S.D.N.Y. 2006) (finding no preemption because "the New York Consumer Fraud Statute [GBL § 349] … is not directly aimed at lenders, and has only an incidental impact on lending relationships"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6696407, at *16 (S.D.N.Y. Nov. 3, 2015) (finding no preemption where the plaintiff sought "to apply a general principle of tort law, applicable equally to a bank's mortgage terms as to a cockroach-infested house or a diseased herd of cattle"); *Walker v. People's United Bank*, 2018 WL 1702395, at *8 (D. Conn. Mar. 30, 2018) (finding 12 C.F.R. § 7.4002(a) did not support preemption where "the non-contract, state laws at issue in this case are laws of general applicability, and are not specifically targeted at national banks").

Indeed, 12 C.F.R. § 7.4002 includes a subsection regarding its interplay with state law, which states "[t]he OCC applies preemption principles derived from the United States Constitution, as interpreted through judicial precedent, when determining whether State laws apply that purport to limit or prohibit charges and fees described in this section." 12 C.F.R. § 7.4002(d). Thus, the regulation contemplates that state laws which prohibit certain fees, like GBL § 399-zzz, are not automatically preempted. If the Court were to find otherwise, it would impermissibly render subsection (d) superfluous. *See, e.g.*, *United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) ("[C]ourts must give effect to all of a statute's provisions so that no part will be inoperative or superfluous, void or insignificant.") (internal quotations omitted)

**II.     Plaintiff's Claim Do Not Offend the First Amendment**

Defendant also argues that the Paper Statement Fee Statute violates TD Bank's First Amendment rights. Ltr. at 2. But this argument rests on the fundamentally flawed premise that the statute either restricts a national bank's ability to charge a banking fee (which it does not) or restricts how the national bank may describe its banking fees (also wrong). The statute restricts conduct, specifically prohibiting all businesses from imposing increased costs on consumers who want to receive paper statements while imposing no restrictions on how those charges may be described.

Further, even if the statute could be read as restricting speech (which it cannot), it is at best a commercial speech regulation that survives intermediate scrutiny. *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). The Paper Statement Fee Statute directly advances the governmental interest asserted: protecting consumers unfairly impacted by businesses' then-emerging practice of imposing charges to receive paper statements. The legislature clearly identified paper statement fee practices that "unfairly impact [certain] consumers," and passed a statute that bars businesses from imposing higher costs on those consumers to receive paper statements. *See* Compl. ¶ 15. As set forth in the legislative history, many consumers, particularly those who are older or have less access to technology, prefer and rely upon paper statements. *See, e.g., id.* By barring businesses from imposing charges associated with paper statements on such consumers, the legislature ensured that those consumers would not have to pay higher costs to access that option. Courts recognize states' interests pursuant to their police power to regulate and prohibit conduct. *See, e.g., Salem Inn, Inc. v. Frank*, 381 F. Supp. 859, 863-64 (E.D.N.Y. 1974) (recognizing government's interests under its police power); *see also Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 448 (S.D.N.Y. 2016) (collecting cases finding a substantial interest in the State's protecting consumers' right to privacy and misuse of consumers' personal data). Additionally, the statute is narrowly tailored to bar the offending practice while permitting businesses to achieve any legitimate purposes they have by other means. Specifically, by permitting businesses to offer a "credit or other incentive," the statute permits efforts to incentivize consumers to opt-in to paperless programs.

**III.    Plaintiff Has Pleaded A Violation Of GBL § 399-zzz**

TD Bank also argues that "N.Y. GBL § 399-zzz does not apply to the account statements plaintiff received." Ltr. at 2. But this is wrong.

The Paper Statement Fee Statute expressly applies to all "person[s], partnership[s], corporation[s], association[s], or other business entit[ies]." NY GBL §399-zzz. This language indicates a broad legislative purpose for the statute to apply to all businesses, including banks. There is no reasonable argument that TD Bank, National Association is not an "association" or at least an "other business entity" under the statute.

Additionally, charging customers a fee for paper account statements is precisely the conduct the Paper Statement Fee Statute seeks to address. These TD Bank account statements "set forth … consumers' electronic deposits and payments, checks paid, daily balances, and the fees that TD Bank charges the consumer, including the TD Bank [paper statement fee]." Compl.


¶ 36. "TD Bank's Account Statements thus reflect both fee charges and payments just as other types of Account Statements (e.g., credit card statements which also reflect that a consumer may be charged a fee and will reflect payments, regardless whether made prior to or after the statement issues)." *Id*. ¶ 38. TD Bank's customers choose to receive their statements in paper form because they may lack internet access in their homes or are concerned about personal privacy. *Id.* ¶ 20. TD Bank's account statements are "billing statements" under the Paper Statement Fee Statute, and there is no support in the legislative history for the proposition that the statute was only intended to apply to statements which set out some amount of money still owed to the business.

### IV. Defendant's Reliance On *Manship v. TD Bank, N.A.* Is Misplaced

In the portion of Defendant's letter relevant to its forthcoming motion to dismiss, Defendant cites a single case, *Manship v. TD Bank, N.A.*, 2021 WL 981587 (N.D.N.Y Mar. 16, 2021) ("*Manship*"). Defendant's reliance on *Manship* is misplaced, because (contrary to what Defendant implies) *Manship* actually rejected two of the three arguments that Defendant advances, including Defendant's primary argument. *See id.* at *7 ("the Court finds that Section 399-zzz is not preempted by the NBA or the OCC's regulations of national banks."); *id.* at *12 ("Because Defendant's billing statement fits the definition of both a 'bill,' and the term 'statement,' the plain language of the statute indicates the New York State Legislature intended to include Defendant's bank account statement within the scope of Section 399-zzz."). *Manship* dismissed the plaintiff's claims entirely based on it reading of the First Amendment. However, this portion of *Manship* is incorrect and Plaintiff respectfully will request that the Court not follow this non-binding district court opinion's reading of the First Amendment.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny TD Bank's anticipated motion to dismiss in its entirety. If the Court finds any deficiencies in the Complaint, then Plaintiff respectfully requests leave to amend to correct those deficiencies. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Very truly yours,

*/s/ Julian C. Diamond*
Julian C. Diamond

CC:    All counsel of record (via ECF)