**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

|  |  |  |
|---|---|---|
| JOSHUA HASTINGS, individually and on behalf of all others similarly situated, | : : : | |
| | : | C.A. No. 1:25-cv-02336-HG |
| Plaintiffs, | : : | |
| | : | ECF CASE |
| | : | |
| -against- | : | **MEMORANDUM OF LAW IN** |
| | : | **SUPPORT OF TD BANK'S MOTION** |
| | : | **TO DISMISS** |
| TD BANK, N.A., | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

Mark B. Rosen
PIERCE ATWOOD LLP
One New Hampshire Avenue, Suite 350
Portsmouth, NH 03801
Tel.: (603) 433-6300
Fax: (603) 433-6372
mrosen@pierceatwood.com

Lucus A. Ritchie
(*pro hac vice* motion pending)
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
Tel: (207) 791-1342
Fax: (207) 791-1350
lritchie@peirceatwood.com

*Attorneys for Defendant TD Bank, N.A.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................II

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

    I.    The Parties ................................................................................................. 2

    II.    TD Bank's Account Agreement and Practices ....................................... 2

    III.    Plaintiff's Claim ....................................................................................... 3

ARGUMENT .................................................................................................................. 4

    I.    Plaintiff's claim is preempted by the National Bank Act. ..................... 4

        A.    Applying Section 399-zzz to bar assessment of the Bank's paper statement fees would significantly interfere with the Bank's federally authorized powers. ......................................................... 5

        B.    There is no sound basis for reaching a contrary conclusion. ..................... 8

    II.    Even if his claim is not preempted, Plaintiff's claim fails because NY GBL § 399-zzz violates the First Amendment. .....................................11

        A.    Section 399-zzz regulates TD Bank's speech. ..........................................11

        B.    Section 399-zzz does not survive intermediate scrutiny. ......................... 14

            1.    Section 399-zzz does not directly advance the stated government interest. ....................................................................... 14

            2.    Section 399-zzz is broader than necessary to serve the asserted government interest. ....................................................... 17

    III.    Plaintiff has not pleaded a violation of Section 349. ........................... 18

        A.    Plaintiff has not pleaded a violation of Section 399-zzz. .......................... 18

        B.    Plaintiff has not pleaded a separate violation of Section 349. .................. 21

CONCLUSION ............................................................................................................. 22

LOCAL RULE 7.1(C) CERTIFICATION ...................................................................... 23

CERTIFICATE OF SERVICE ....................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996) ........................................................................................................ 15

*Abel v. KeyBank USA, N.A.*,
    313 F. Supp.2d 720 (N.D. Ohio 2004) ............................................................................ 9

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) .......................................................................................................... 9

*Aptive Enviro., LLC v. Village of East Rockaway, N.Y.*,
    2019 WL 3206132 (E.D.N.Y. July 16, 2019) ................................................................ 17

*Art & Antique Dealers League of Am., Inc. v. Seggos*,
    121 F.4th 423 (2d Cir. 2024) .......................................................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................................... 4

*Bank of Am. v. City & Cnty. of San Francisco*,
    309 F.3d 551 (9th Cir. 2002) ............................................................................................ 7

*Baptista v. JPMorgan Chase Bank, N.A.*,
    640 F.3d 1194 (11th Cir. 2011) ........................................................................................ 7

*Barnett Bank of Marion Cty., N.A. v. Nelson*,
    517 U.S. 25 (1996) ............................................................................................... 5, 7, 9, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................... 4

*Cantero v. Bank of Am.*,
    602 U.S. 205 (2024) .......................................................................................................... 5

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of N.Y.*,
    447 U.S. 557 (1980) .............................................................................................. 14, 15, 17

*Centro de law Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ...................................................................................... 17, 18

*Clear Channel Outdoor, Inc. v. City of New York*,
    594 F.3d 94 (2d Cir. 2010) .............................................................................................. 15

*Decohen v. Capital One, N.A.*,
    703 F.3d 216 (4th Cir. 2012) ............................................................................................ 5

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ................................................................. 2

*DoorDash, Inc. v. City of New York*,
  750 F. Supp. 3d 285 (S.D.N.Y. 2024) .................................................11

*Expressions Hair Design v. Schneiderman*,
  581 U.S. 37 (2017)......................................................................11, 12

*Fid. Fed. Sav & Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982)............................................................................ 6

*Frisby v. Schultz*,
  487 U.S. 474 (1988)......................................................................... 17

*Greater New Orleans Broad. Ass'n v. United States*,
  527 U.S. 173 (1999) ......................................................................... 15

*Gutierrez v. Wells Fargo Bank, N.A.*,
  704 F.3d 712 (9th Cir. 2012) ..................................................... 5, 9, 10

*IMS Health, Inc. v. Sorrell*,
  630 F.3d 263 (2d Cir. 2010).......................................................... 14, 15

*In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*,
  1 F. Supp. 3d 34 (E.D.N.Y. 2014) ..................................................... 10

*In re Interborough Consol. Corp.*,
  288 F. 334 (2d Cir. 1923) ............................................................ 20, 21

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Litig.*,
  725 F.3d 65 (2d Cir. 2013) .................................................................. 5

*In re Refco Sec. Litig.*,
  759 F. Supp. 2d 301 (S.D.N.Y. 2010).................................................. 20

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
  150 F. Supp. 3d 593 (D.S.C. 2015)................................................... 9, 10

*Mann v. TD Bank, N.A.*,
  2009 WL 3818128 (D.N.J. Nov. 12, 2009) ........................................ 7, 8, 9

*Manship v. TD Bank, N.A*,
  2021 WL 981587 (N.D.N.Y Mar. 16, 2021) ........................................ *passim*

*Markatos v. Citibank, N.A.*,
  760 F. Supp. 3d 70 (S.D.N.Y. 2024) .................................................... 2

*Martinez v. Wells Fargo Home Mortg., Inc.*,
    598 F.3d 549 (9th Cir. 2010) ........................................................................ 9

*McClellan v. Chipman*,
    164 U.S. 347 (1896) .................................................................................... 5

*Monroe Retail, Inc. v. RBS Citizens, N.A.*,
    589 F.3d 274 (6th Cir. 2009) ................................................................... 7, 9

*Montgomery v. Bank of Am. Corp.*,
    515 F. Supp.2d 1106 (C.D. Cal. 2007) ....................................................... 9

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 (2d Cir. 2001) ................................................................. 16, 17

*New Mexico v. Capital One Bank (USA) N.A.*,
    980 F. Supp. 2d 1314 (D.N.M. 2013) ......................................................... 9

*Pac. Capital Bank, N.A. v. State of Conn.*,
    542 F.3d 341 (2d Cir. 2008) ................................................................... 5, 9

*Reichling v. Cont'l Bank*,
    813 F. Supp. 197 (E.D.N.Y. 1993) ........................................................... 21

*Rose v. Chase Bank USA, N.A.*,
    513 F.3d 1032 (9th Cir. 2008) .................................................................... 9

*Rosenberg v. Triborough Bridge & Tunnel Auth.*,
    2021 WL 980744 (S.D.N.Y. Mar. 16, 2021) ................................... 19, 20, 21

*Safelite Grp., Inc. v. Jepsen*,
    764 F.3d 258 (2d Cir. 2014) ................................................................. 14, 15

*Smiley v. Citibank (S.D.), N.A.*,
    517 U.S. 735 (1996) .................................................................................... 9

*Sorrell v. IMS Health*,
    564 U.S. 552 (2011) .................................................................................. 11

*SPGGC, LLC v. Ayotte*,
    488 F.3d 525 (1st Cir. 2007) .................................................................. 5, 8

*Telesco v. Starbucks Corp.*,
    682 F. Supp. 3d 397 (S.D.N.Y. 2023) ....................................................... 21

*Vugo, Inc. v. City of New York*,
    931 F.3d 42 (2d Cir. 2019) ....................................................................... 14

*Wachovia Bank, N.A. v. Burke*,
    414 F.3d 305 (2d Cir. 2005) ................................................ 5

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1 (2007) .......................................................... 5, 6

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011) .................................. 21

*Wells Fargo Bank of Texas N.A. v. James*,
    321 F.3d 488 (5th Cir. 2003) ............................................... 7

**STATUTES**

12 U.S.C. § 24 (Seventh) ............................................................ 5, 6

12 U.S.C. § 25b(b)(1)(B) ........................................................... 5, 9

12 U.S.C. § 484(a) ......................................................................... 6

12 U.S.C. § 93a ............................................................................. 6

NY G.B.L. § 349 ................................................................... *passim*

N.Y. G.B.L. § 399-zz .................................................................... 19

NY G.B.L. § 399-zzz ............................................................. *passim*

NY G.B.L. § 702 .......................................................................... 20

N.Y. Pers. Prop. Law § 413 ......................................................... 19

N.Y. Pub. Serv. Law § 224-b ....................................................... 19

**RULES**

F.R. Civ. P. 12(b)(6) ...................................................................... 4

**REGULATIONS**

12 C.F.R. § 7.4000 ......................................................................... 6

12 C.F.R. § 7.4001(a) ..................................................................... 8

12 C.F.R. § 7.4002 ............................................................... *passim*

12 C.F.R. § 7.4007 ..................................................................... 6, 9

12 C.F.R. § 205.9(b) ...................................................................... 6

**LEGISLATIVE DOCUMENTS**

New York Bill Jacket, 2010 S.B. 7296, Ch. 556 ............................................................. 8, 16, 20

**OTHER AUTHORITIES**

*Bill*, Oxford English Dictionary,
    https://www.oed.com/dictionary/bill_n3?tab=meaning_and_use#20616222 ................... 19

Complaint, *Manship v. TD Bank, N.A.*, 20-cv-00329, Dkt. No. 1 (N.D.N.Y. Mar. 23,
    2020) ..................................................................................................................................... 4

Complaint, *Melackrinos v. TD Bank, N.A.*, 18-cv-03055, Dkt. No. 1 (S.D.N.Y. Apr. 6,
    2018) ..................................................................................................................................... 4

Letter Motion, *Melackrinos v. TD Bank, N.A.*, 18-cv-03055, Dkt. No. 14 (S.D.N.Y.
    June 1, 2018) ........................................................................................................................ 4

Notice of Voluntary Dismissal, *Melackrinos v. TD Bank, N.A.*, 18-cv-03055, Dkt. No. 18
    (S.D.N.Y. July 23, 2018) ..................................................................................................... 4

OCC Interp. Ltr. No. 1041, 2005 WL 4795029 (Sept. 28, 2005) ........................................... 6, 10

OCC Interp. Ltr. No. 572, 1992 WL 598379 (Jan. 14, 1992) ................................................. 6, 10

*Statement of Account*, Black's Law Dictionary (12th ed. 2024) ................................................ 19

**INTRODUCTION**

This case involves an attempt to re-litigate a legal theory already rejected by the Northern District of New York in *Manship v. TD Bank, N.A.* This case, as in *Manship*, is a putative class action challenging the alleged practice of TD Bank, N.A. ("TD Bank" or "Bank") of assessing fees on deposit accounts—specifically, the Bank's practice of assessing paper statement fees. Plaintiff Joshua Hastings ("Plaintiff" or "Hastings") contends that TD Bank violated New York General Business Law ("NY G.B.L.") § 399-zzz, which prohibits paper statement fees in connection with billing statements in certain circumstances, by charging a $3.00 fee for mailing Plaintiff his checking account statements. Plaintiff further claims that this purported violation of Section 399-zzz constitutes a "deceptive act and practice" under NY G.B.L. § 349. In *Manship*, Chief Judge Suddaby dismissed a substantively identical putative class action complaint, *see* 2021 WL 981587 (N.D.N.Y Mar. 16, 2021), and this Court should do likewise for several reasons.

First, the National Bank Act ("NBA") and its implementing regulations explicitly grant national banks the authority to set non-interest fees on deposit accounts: "A national bank may charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). Because Plaintiff would apply Section 399-zzz to prohibit national banks from exercising this federally authorized power by charging non-interest fees, his claim is preempted.

Second, even if Section 399-zzz were not preempted, the Complaint violates the First Amendment because it restricts how TD Bank can describe the charges it assesses for paper statements. Crucially, Section 399-zzz does *not* make it illegal to charge customers who receive paper statements more than those who receive electronic statements; rather, it allows the Bank to charge every customer for receiving statements while providing a "credit" to those who sign up for electronic statements. Thus, TD Bank may collect the same amount from the same customers

as long as it does not label the charge a "fee." This regulation of how TD Bank describes its deposit account service charges cannot survive intermediate scrutiny.

Finally, the Complaint must be dismissed because Plaintiff failed to plead a violation of either Section 399-zzz or Section 349. On its face, Section 399-zzz does not apply to the checking account statements Plaintiff received. And the conduct Plaintiff challenges was contractually authorized, clearly conveyed, and thus not misleading or deceptive for purposes of Section 349.

Accordingly, as explained below, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

### I.     The Parties

TD Bank is a federally chartered national bank. Compl. ¶ 11. As such, TD Bank is regulated by the Office of the Comptroller of Currency ("OCC"), which has the congressionally authorized power to regulate and supervise national banks under the NBA. *Id.* ¶ 24. Plaintiff Hastings alleges he maintains a depository checking account with TD Bank. *Id.* ¶ 10.

### II.    TD Bank's Account Agreement and Practices

TD Bank's Personal Deposit Account Agreement ("PDAA"), which governs Plaintiff's relationship with the Bank, discloses that the Bank "may impose a fee, as disclosed on the Personal Fee Schedule, for certain Account types that choose to receive paper statements." Exhibit A, at 13 (PDAA).[1] The Bank's Personal Fee Schedule, a short two-page document, clearly discloses that the Bank assesses a $3.00 "paper statement fee (per statement cycle)." Exhibit B, at 1. The PDAA provides that customers of the Bank "promise to pay the charges listed on the Personal Fee

---

[1] Citations to "Ex. __" refer to Exhibits to the accompanying Declaration of Mark B. Rosen. The Court can review the PDAA and the related Personal Fee Schedule on this motion to dismiss because they are referenced in and central to the Complaint. *See* Compl. ¶¶ 4, 31 & n.1; *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 74 (S.D.N.Y. 2024).

Schedule" and permits the Bank "to deduct these charges, as earned, directly from [the customer's] account." Ex. A, at 2.

In accordance with the PDAA, TD Bank has provided paper account statements to Plaintiff and has charged him the associated fee disclosed in the Fee Schedule. Compl. ¶ 10; *see* Ex. A at 6. Account statements reflect debits and credits to an account, including electronic deposits and payments, checks paid, daily balances, and the fees charged on the account. Compl. ¶ 36. As such, these account statements are not bills reflecting amounts due and owing; rather, they are a retrospective accounting of transactions and balances. Plaintiff does not allege that he opted out of mailed account statements or otherwise did not wish to receive such statements.

## III. Plaintiff's Claim

Plaintiff has filed a putative class action asserting a single cause of action: that TD Bank violated Section 399-zzz by charging a $3.00 fee for mailing Plaintiff his checking account statement in paper form and thereby committed a "deceptive act and practice" under Section 349. Section 399-zzz purports to prohibit various entities from charging consumers "an additional rate or fee or a differential in the rate or fee associated with payment on an account" when the consumer chooses to pay by mail or chooses to receive "a paper billing statement." NY G.B.L. § 399-zzz(1). But it specifically provides that this restriction is "[s]ubject to federal law and regulation," and does not prevent businesses "from offering consumers a credit or other incentive to elect a specific payment or billing option." *Id.* A violation of Section 399-zzz is a "deceptive act and practice subject to enforcement under article twenty-two-A of this chapter." *Id.* § 399-zzz(2).

Plaintiff alleges that his account statements are "billing statements," and that TD Bank has therefore wrongly assessed paper statement fees; accordingly, Plaintiff asserts that he is entitled to

relief under Section 349. Compl. ¶¶ 39-40, 54. Plaintiff does not assert a claim for breach of the PDAA, nor does he assert any allegedly deceptive act independent of Section 399-zzz.

Plaintiff's claims are substantively identical to two previously dismissed cases. The first was filed in the Southern District of New York by the same counsel that represent Plaintiff. *Melackrinos v. TD Bank, N.A.*, 18-cv-03055, Dkt. No. 1 (S.D.N.Y. Apr. 6, 2018). In *Melackrinos*, after TD Bank asserted various defenses to the Section 399-zzz / Section 349 claim, *id.* Dkt. No. 14 (June 1, 2018), Plaintiff's counsel dismissed the case voluntarily, *id.* Dkt. No. 18 (July 23, 2018). The second was filed in the Northern District of New York by separate counsel. *Manship v. TD Bank, N.A.*, 20-cv-00329, Dkt. No. 1 (N.D.N.Y. Mar. 23, 2020). Chief Judge Suddaby dismissed the claim in *Manship*, holding that Section 399-zzz, as applied in the plaintiff's complaint, violated TD Bank's First Amendment rights. *Manship*, 2021 WL 981587, at *8-10. Plaintiff now hopes the third time is the charm.

## ARGUMENT

Under Rule 12(b)(6), a complaint should be dismissed for failure to state a claim if it lacks sufficient factual allegations to "raise a right to relief above the speculative level," as a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.     Plaintiff's claim is preempted by the National Bank Act.

Federal law preempts Plaintiff's claim that Section 399-zzz prevents TD Bank, a national bank, from charging non-interest fees. "National banks are instrumentalities of the federal government created for a public purpose, and as such necessarily subject to the paramount

authority of the United States." *McClellan v. Chipman*, 164 U.S. 347, 357 (1896) (quotation marks omitted); *Pac. Capital Bank, N.A. v. State of Conn.*, 542 F.3d 341, 351 (2d Cir. 2008). Congress has granted national banks "enumerated powers, such as the power to make contracts, to receive deposits, and to make loans, together with 'all such incidental powers as shall be necessary to carry on the business of banking.'" *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 722 (9th Cir. 2012) (quoting 12 U.S.C. § 24 (Seventh)). Both enumerated and incidental powers of national banks "ordinarily pre-empt[] contrary state law." *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996); *see Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007).[2] States may not "prevent or significantly interfere with the national bank's exercise of its powers." *Barnett Bank*, 517 U.S. at 33; *see Cantero v. Bank of Am.*, 602 U.S. 205, 220 (2024); 12 U.S.C. § 25b(b)(1)(B). "[W]hen state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Watters*, 550 U.S. at 12.

A.    **Applying Section 399-zzz to bar assessment of the Bank's paper statement fees would significantly interfere with the Bank's federally authorized powers.**

In determining whether Plaintiff's claim is preempted, the Court must assess two questions: (1) whether the challenged conduct is an exercise of TD Bank's powers under the NBA and the OCC's implementing regulations, and, if so, (2) whether application of state law would limit the Bank's exercise of those powers. *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 531 (1st Cir. 2007). In this case, the answer to both questions is "yes."

First, TD Bank's assessment of paper statement fees on deposit accounts falls squarely within its banking powers. The NBA expressly grants the Bank power to receive deposits, as well

---

[2] Thus, the "presumption against preemption . . . does not apply to the NBA." *Decohen v. Capital One, N.A.*, 703 F.3d 216, 222-23 (4th Cir. 2012); *see Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005). *Cf. In re Methyl Tertiary Butyl Ether (MTBE) Prods. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (applying presumption when historic state police powers are affected).

as all "incidental powers" necessary to carry on the "business of banking." 12 U.S.C. § 24 (Seventh); *see Watters*, 550 U.S. at 7. Implementing this statutory authority, the OCC has promulgated regulations recognizing that a "national bank may receive deposits and engage in any activity incidental to receiving deposits." 12 C.F.R. § 7.4007(a).[3] The OCC has stated that "[t]he provision of monthly account statements to customers is . . . part of the Bank's powers to receive deposits and a safe and sound banking practice." OCC Interp. Ltr. No. 1041, 2005 WL 4795029, at *2 (Sept. 28, 2005). Further, the power to receive deposits includes the authority to "charge its customers *non-interest charges and fees*, including deposit account service charges." 12 C.F.R. § 7.4002(a) (emphasis added);[4] *see id.* § 7.4002(b)(2) ("The establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion . . . ."); OCC Interp. Ltr. No. 572, 1992 WL 598379, at *2, 5 (Jan. 14, 1992) (concluding that proposed state law cap on account maintenance fees was preempted because it "purport[ed] to <u>mandate the type and amount of fees</u> that may be assessed by national banks" (emphasis in original)). Accordingly, national banks have the power to assess non-interest fees related to a deposit account—including fees for monthly account statements.

---

[3] As a national bank, TD Bank is subject to federal oversight. 12 U.S.C. § 484(a). The OCC oversees national banks' exercise of federally authorized powers, 12 C.F.R. § 7.4000, and Congress has delegated to the OCC authority to determine the scope of national banks' incidental powers, 12 U.S.C. § 93a. *See Watters*, 550 U.S. at 6. OCC regulations thus possess the same preemptive effect as the NBA. *See Fid. Fed. Sav & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982).

[4] "Service charges" are one subset of the "non-interest charges and fees" authorized under Section 7.4002. Because the Bank has the authority to charge *any* "non-interest charges and fees" on deposit accounts, the Bank need not show that its paper statement fees are "service charges" to establish that it has the federally authorized power to assess those fees. 12 C.F.R. § 7.4002(a). Nonetheless, paper statement fees are in fact service fees. Although federal law mandates that national banks provide customers with statements as a required service, 12 C.F.R. § 205.9(b), the provision of statements is a service. The mandatory nature of the service is irrelevant.

Second, Plaintiff's claim would significantly interfere with TD Bank's ability to exercise its lawful power to establish and assess deposit account service charges. Plaintiff contends that Section 399-zzz *prohibits* the Bank from assessing paper statement fees. Compl. ¶¶ 3-5. That is, he says that Section 399-zzz prohibits that which the NBA—as discussed above—would otherwise expressly allow (*i.e.*, the assessment of the fee as a non-interest charge). *See Barnett Bank*, 517 U.S. at 31. Thus, the claim directly curtails TD Bank's authority to assess a particular type of non-interest charges and fees on deposit accounts, contrary to the NBA. *Id.*; *see Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197-98 & n.2 (11th Cir. 2011) (statutory and unjust enrichment claims challenging check-cashing fees preempted because they would "reduce[] the bank's fee options"); *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 281, 283-84 (6th Cir. 2009) (conversion claim challenging national bank's authority to charge service fees preempted); *Wells Fargo Bank of Texas N.A. v. James*, 321 F.3d 488, 495 (5th Cir. 2003) (national banks' authority to "charge [their] customers non-interest charges and fees" preempted state statute prohibiting check-cashing fees); *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 563-64 (9th Cir. 2002) (NBA preempted ordinance prohibiting charging ATM fees to non-depositors).

Because the Bank has the power to assess non-interest charges on deposit accounts and because Section 399-zzz would substantially interfere with this power by prohibiting a certain type of non-interest fee altogether, Plaintiff's claim against the Bank is preempted. This conclusion is consistent with *Mann v. TD Bank, N.A.*, 2009 WL 3818128 (D.N.J. Nov. 12, 2009). In that case, the court concluded that a challenge to national banks' authority to charge a dormancy fee on gift cards was preempted by the NBA. *Id.* at *1-2, 4. The court dismissed, *inter alia*, a claim under New Jersey's unfair business practices statute because 12 C.F.R. § 7.4002 "clearly authorizes national banks to sell gift cards subject to dormancy and maintenance fees, calculated by national

banks in their sound discretion," and, therefore, "any application of [state law] that would penalize Defendants for doing so is clearly preempted." *Id.* at *4; *see SPGGC, LLC*, 488 F.3d at 533 (prohibition on fees charged to gift cards by national banks preempted because it would significantly interfere with the banks' implied powers). The same holds true in this case; because Section 7.4002 clearly authorizes non-interest fees on deposit accounts (including fees such as monthly paper statements), any state prohibition or penalty on such fees is preempted.

Because TD Bank's paper statement fee is precisely the kind of fee-setting activity that the NBA and OCC grant national banks the right to impose without interference from state law, *see* 12 C.F.R. § 7.4001(a), it is unsurprising that Section 399-zzz ultimately acknowledges the primacy of federal law. Section 399-zzz expressly states that its prohibition on "charg[ing] an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to . . . receive a paper billing statement" is "[s]ubject to federal law and regulation." NY G.B.L. § 399-zzz(1).[5] By its own terms, therefore, Section 399-zzz acknowledges that it cannot limit a national bank's implied powers—contrary to Plaintiff's claim.

### B. There is no sound basis for reaching a contrary conclusion.

TD Bank recognizes that Chief Judge Suddaby did not adopt the preemption argument that TD Bank raised in its motion to dismiss the complaint in *Manship*. *See* 2021 WL 981587, at *5-7. The preemption reasoning in the *Manship* decision, however, rested on two erroneous premises.

---

[5] *See* New York Bill Jacket, 2010 S.B. 7296, Ch. 556 ("[T]here is a substantial chance that this bill, if enacted, could not be effectively applied to federally chartered or licensed banking organizations which have New York customers, due both to the prohibitions in the bill on imposing additional charges being 'subject to federal law and regulation,' as well as to the possible preemption of such state requirements by federal law and regulations.") (comments of the New York Banking Department).

First, it placed undue weight on the fact that Section 399-zzz is a law of general applicability. *Id.* at *6-7. Preemption does not depend on the label affixed to the law, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004), but rather on the effect of applying the law to the activities of a national bank, *Barnett Bank*, 517 U.S. at 33; *Rose v. Chase Bank USA, N.A.*, 513 F.3d 1032, 1038 (9th Cir. 2008). Laws of general applicability—just like laws targeted at national banks—are preempted if they significantly interfere with the Bank's exercise of its enumerated or incidental powers. 12 U.S.C. § 25b(b)(1)(B); 12 C.F.R. § 7.4007(c); *see Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 738 & n.1, 747 (1996) (NBA preempts implied covenant and unjust enrichment claims); *Pac. Capital*, 542 F.3d at 353; *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 606 (D.S.C. 2015) ("Where federal preemption applies, it bars both a direct assertion of state law by a state legislature, and the assertion of state law causes of action by private plaintiffs based on laws of general applicability." (citations omitted)); *New Mexico v. Capital One Bank (USA) N.A.*, 980 F. Supp. 2d 1314, 1326 (D.N.M. 2013) ("the fact that [a law] is a law of general applicability that does not target national banks or even banks generally is not dispositive").[6]

Second, the *Manship* decision concluded that state law regulation of a bank's assessment of non-interest charges and fees is preempted only if the bank engaged in some analysis of the extent to which those charges and fees are appropriate pursuant to "'sound banking judgment and

_____

[6] *See also Gutierrez,* 704 F.3d at 725 (claim brought under "unfairness" prong of California consumer protection statute preempted); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555-56 (9th Cir. 2010) (holding that a claim of "unfair" fees under the state unfair competition law was preempted by Section 7.4002 because it targeted a national bank's charges of non-interest fees); *Monroe Retail, Inc.*, 589 F.3d at 284 (holding that conversion claim was preempted by Section 7.4002); *Mann*, 2009 WL 3818128, at *4 (state unfair trade practices claim preempted by Section 7.4002); *Montgomery v. Bank of Am. Corp.*, 515 F. Supp.2d 1106, 1113-14 (C.D. Cal. 2007) (concluding that the state unlawful business practices statute was preempted by Section 7.4002); *Abel v. KeyBank USA, N.A.*, 313 F. Supp.2d 720, 724-27 (N.D. Ohio 2004) (concluding that the state installment sales act was preempted by federal law).

safe banking principles.'" *Manship*, 2021 WL 981587, at *6-7 (quoting 12 C.F.R. § 7.4002(b)). Not so. *Gutierrez*, 704 F.3d at 724-25. The NBA "gives to the OCC the exclusive authority to exercise visitorial oversight over national banks, and it entrusts the OCC with the supervision of national banks' activities that are authorized by federal law." *Id.* at 724. Thus, the question of whether the Bank's decision-making process adequately considered and complied with the factors set forth by the OCC in Section 7.4002(b)(2) relevant to sound banking judgment and safe banking principles is an "inquiry that falls squarely within the OCC's supervisory powers." *Id.* at 724-25. It is completely "inapposite to the issue of preemption." *Id.* at 725 (quotation marks omitted).

*Manship* went astray for other reasons as well. It relied on *In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34 (E.D.N.Y. 2014), which rejected the preemption reasoning in *Gutierrez*. *Manship*, 2021 WL 981587, at *6. The decision in *In re HSBC*, however, has been criticized both for falling prey to "an echo-chamber effect" that arose from a series of overdraft fee cases that pre-dated *Gutierrez* and for failing to adequately deal with *Gutierrez*'s "more nuanced understanding of how state law is preempted." *In re TD Bank*, 150 F. Supp.3d at 613 n.7, 616-17. *In re HSBC* also did not involve a flat ban on a specific type of non-interest fee, as in *Gutierrez* and this case. 1 F. Supp. 3d at 47. Further, *Manship* did not recognize that the OCC has issued guidance noting that monthly statements are part of the business of banking related to deposit accounts, OCC Interp. Ltr. No. 1041, 2005 WL 4795029, at *2, and that, therefore, related fees are necessarily non-interest fees authorized under Section 7.4002, *see* OCC Interp. Ltr. No. 572, 1992 WL 598379, at *2, 5. *Manship*, 2021 WL 981587, at *6.

Accordingly, the *Manship* decision misapplies the law of preemption under the NBA, and this Court should instead apply the well-accepted principles set forth in *Barnett Bank* and its progeny to find that Plaintiff's claims are preempted under the NBA.

**II.      Even if his claim is not preempted, Plaintiff's claim fails because NY GBL § 399-zzz violates the First Amendment.**

Although Chief Judge Suddaby rejected the Bank's preemption argument in *Manship*, he nevertheless dismissed the identical claim asserted in that case because NY G.B.L. § 399-zzz is unconstitutional as applied under the First Amendment. 2021 WL 981587, at *8-10. As the court recognized, Section 399-zzz regulates the manner in which TD Bank may describe and disclose its fees and charges, and thus restricts TD Bank's speech. *Id.* As the court further recognized, the speech restriction cannot survive intermediate scrutiny and is therefore unconstitutional as applied to TD Bank's paper statement fees. *Id.* If it reaches the First Amendment issue, this Court should dismiss Plaintiff's claim on the same grounds.

**A.      Section 399-zzz regulates TD Bank's speech.**

A "typical price regulation . . . simply regulate[s] the amount that a [business] could collect," and does not implicate the First Amendment. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017). In contrast, when a law "regulat[es] the communication of prices rather than prices themselves, [the law] regulates speech." *Id.* at 48; *see DoorDash, Inc. v. City of New York*, 750 F. Supp. 3d 285, 298 (S.D.N.Y. 2024) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated." (quoting *Sorrell v. IMS Health*, 564 U.S. 552, 568 (2011))), *superseded on other grounds*. This case involves a regulation of speech, not prices.

In *Expressions Hair Design*, the Supreme Court analyzed the First Amendment implications of a New York law providing that "no seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means." 581 U.S. at 41. The Supreme Court held that the law regulated "how sellers may communicate their prices" and therefore regulated speech: "A merchant who wants to charge $10

for cash and $10.30 for credit may not convey that price any way he pleases. He is not free to say '$10, with a 3% credit card surcharge' or '$10, plus $0.30 for credit' because both of those displays identify a single sticker price—$10—that is less than the amount credit card users will be charged. Instead, if the merchant wishes to post a single sticker price, he must display $10.30 as his sticker price." *Id.* at 47-48. *Expressions Hair Design* compels the conclusion that Section 399-zzz is a regulation of speech, as the court concluded in *Manship*.

In *Manship*, the court—applying *Expressions Hair Design*—held that Section 399-zzz "regulates the communication of fees rather than merely the price itself." 2021 WL 981587, at *8-9. The plaintiff in *Manship* asserted the same claim that Plaintiff asserts in this case: "Plaintiff's Complaint alleges that Defendant charged her (along with all other class members) a $1.00 monthly fee to receive their account statements in paper form ('paper statement') in violation of [Section 399-zzz] . . . ." *Id.* at *1. The court held that Section 399-zzz "regulates how businesses can communicate their fees (indeed arguably more so than does the statute in *Expressions I*)," and therefore that the statute regulated speech. *Id.* at *8.

This Court should reach the same conclusion. Section 399-zzz prohibits businesses from charging consumers "an additional rate or fee . . . when the consumer chooses to . . . receive a paper billing statement." NY G.B.L. § 399-zzz(1). However, the statute explicitly allows businesses to offer consumers "a credit or other incentive to elect a specific payment or billing option." *Id.* The statute thus does not prevent businesses from charging customers who receive paper statements more than customers who choose electronic statements; it only prevents them from describing the difference as a "fee." TD Bank describes each of its fees and charges in various written materials, including its Fee Schedule. Compl. ¶ 4. TD Bank also describes the charges applied to each customer's account in their monthly account statements, along with their deposits

and withdrawals from the previous month. *Id.* ¶ 10. Section 399-zzz would purportedly prohibit TD Bank from describing the charge as a $3 "fee" to customers who receive a paper statement while allowing TD Bank to offer a $3 "credit" to customers who receive electronic statements.[7] Thus, TD Bank could legally charge *all* customers for receiving a statement, regardless of whether they receive the statement electronically or in paper form, and then provide an offsetting "credit" or "discount" to customers who elect to receive electronic statements. This would yield the same result as charging a fee for paper statements only: all else equal, customers who receive paper statements pay $3 more than customers who receive electronic statements.

Accordingly, the only thing that Section 399-zzz regulates is the words that TD Bank may use orally and in its written materials to describe its charges and convey that information to its customers.

> Section 399-zzz prohibits businesses from charging consumers for receiving a paper statement (through which businesses traditionally communicate their prices and provide additional details for the charges). However, it also expressly provides businesses the option to offer consumers a credit for receiving an electronic statement instead of a paper statement. This last fact is critical because it expressly permits Defendant to deprive one class of customers (i.e., those who do not receive an electronic statement instead of a paper statement) of a credit given to another class of customers (i.e., those who do receive an electronic statement instead of a paper statement), while restricting Defendant from labeling this deprivation of the credit as a "fee."

*Manship*, 2021 WL 981587, at *8. Because it allows TD Bank to collect more from customers receiving paper statements than from those receiving electronic statements as long as it does not use the word "fee," the statute indisputably regulates First Amendment speech. *Id.* at *9.

---

[7] This assumes that TD Bank's monthly account statements qualify as "billing statements" under the statute. They do not. *See infra*, Section III.A.

**B.      Section 399-zzz does not survive intermediate scrutiny.**

TD Bank's speech that is regulated by the statute is "commercial speech." *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of N.Y.*, 447 U.S. 557, 561 (1980). Regulations of commercial speech must pass intermediate scrutiny to be enforceable. *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 261 (2d Cir. 2014). Accordingly, restrictions of commercial speech are analyzed under a four-part test: "(1) whether the expression is protected by the First Amendment (i.e., whether the speech concerns lawful activity and is not misleading); (2) whether the government interest is substantial; (3) if both inquiries are satisfied, whether the restriction directly advances the government interest asserted; and (4) whether the restriction is more extensive than necessary to serve the government interest." *Manship*, 2021 WL 981587, at *9 (citing *Cent. Hudson*, 447 U.S. at 566; *Vugo, Inc. v. City of New York*, 931 F.3d 42, 51 (2d Cir. 2019)).

Plaintiff does not allege that TD Bank's disclosure of the paper statement fee was misleading, and indeed confirms that TD Bank disclosed the fee in its written materials to customers. Compl. ¶ 4. For its part, TD Bank does not challenge—for purposes of this motion— the substantiality of the government's purported interest in protecting consumers. *See id.* ¶¶ 15-16. Accordingly, only the final two prongs of the *Central Hudson* test are at issue. As Chief Judge Suddaby already held in *Manship*, Section 399-zzz is unconstitutional under the final two prongs of the *Central Hudson* test because (1) the law does not directly advance the stated government interest and (2) the law is broader than necessary to serve the state interest.

**1.      Section 399-zzz does not directly advance the stated government interest.**

For the law to survive the third prong of the *Central Hudson* test, the Court must find that Section 399-zzz "directly advance[s] the state interest involved." *IMS Health, Inc. v. Sorrell*, 630 F.3d 263, 276 (2d Cir. 2010). "This [third] prong "is 'critical' and requires invalidating a regulation

that restricts commercial speech 'if it provides only ineffective or remote support' for the government's interest." *Id.* at 277 (quoting *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999)). The law must not only advance the government interest, but also do so "to a material degree." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). "A regulation may also be deemed constitutionally problematic if it contains exceptions that 'undermine and counteract' the government's asserted interest." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 106 (2d Cir. 2010). Section 399-zzz does not directly advance the State's interest in protecting customers who receive paper statements.

In *Manship*, the court held that Section 399-zzz "does not directly advance the State's interest in protecting its consumers from harmful conduct." 2021 WL 981587, at *10. The court noted that the statute creates a "semantic distinction" by prohibiting businesses from imposing a charge or fee on customers who receive paper statements but explicitly allowing businesses to offer "incentives" or "credits" to customers who receive electronic statements. *Id.* "The statute, then, relies on a semantic distinction between fees and credits, and does not (as a practical matter) prevent businesses from charging customers different rates depending on their choice of paper or electronic statements." *Id.*

> At most, this semantic distinction would have a *de minimis* effect on consumer choice. Such a *de minimis* effect on consumer choice is not sufficient to directly advance the State's interest under *Cent. Hudson*. *Jespen* [*sic*], 764 F.3d at 265. Accordingly, the Court finds that Section 399-zzz does not directly advance the State's substantial interest in protecting its citizens from harmful conduct.

*Id.*

For the reasons articulated in *Manship*, this Court should hold that Section 399-zzz is unconstitutional because it does not directly advance the State's interest in consumer protection. The statute creates an ultimately pointless distinction between imposing a "fee" on customers who

receive paper statements and offering "credits" or "incentives" to customers who receive electronic statements. As discussed above, it thus prohibits businesses from charging a $3 "fee" for paper statement customers, but allows businesses to deny those same customers a $3 "credit" that they would otherwise be entitled to if they received electronic statements. In both scenarios, customers who receive paper statements are paying more: they are either being charged a fee or denied a credit simply because they receive paper statements. And yet, the statute explicitly allows the second of these scenarios. It is hard to imagine how this meaningfully protects banking customers.

Indeed, when the law was being passed, the New York Banking Department specifically noted that "it is not clear how effective the bill would be in affecting the targeted practices." *See* New York Bill Jacket, 2010 S.B. 7296, Ch. 556. As the Banking Department explained, "[w]hile prohibiting businesses from charging consumers who wish to receive paper bills or pay by mail 'an additional rate or fee or a differential in the rate or fee,'" the law "specifically does not prohibit a business 'from offering consumers a credit or other incentive to elect a specific payment or billing option.' While there is certainly a formal distinction between prohibiting an additional fee and permitting a credit, it is not clear that there is a great degree of practical difference." *Id.*

If anything, the statute is antithetical to New York's interest in consumer protection. As Plaintiff would apply it, Section 399-zzz makes "billing statements" less informative and more confusing by precluding TD Bank from accurately describing its fee as a "paper statement fee." Rather than directly acknowledging the charge, banks would instead be encouraged to find indirect ways of "incentivizing" customers to choose electronic statements. This result is fundamentally incompatible with "the core First Amendment value[] of promoting efficient exchange of information," underscoring Section 399-zzz's invalidity under the First Amendment. *Nat'l Elec.*

*Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114 (2d Cir. 2001); *see Central Hudson*, 447 U.S. at 565 ("The State cannot regulate speech that poses no danger to the asserted state interest.").

> ### 2. Section 399-zzz is broader than necessary to serve the asserted government interest.

Under the fourth prong of the *Central Hudson* test, the Court must consider the "fit between the legislature's ends and the means chosen to accomplish those ends." *Art & Antique Dealers League of Am., Inc. v. Seggos*, 121 F.4th 423, 439 (2d Cir. 2024). "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Aptive Enviro., LLC v. Village of East Rockaway, N.Y.*, 2019 WL 3206132, at *7 (E.D.N.Y. July 16, 2019) (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)). The law does not need to use the least restrictive means possible, but it must use a "means narrowly tailored to achieve the desired objective." *Seggos*, 121 F.4th at 439. The regulation must not "burden substantially more speech than necessary to further [the state's] legitimate interests." *Centro de law Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 115 (2d Cir. 2017).

In *Manship*, Chief Judge Suddaby held that "even if the Court were to find that Section 399-zzz directly advances [] a substantial State interest, the Court would not find that it is narrowly tailored in doing so." 2021 WL 981587, at *10. That court concluded that the phrase "credit or other incentive" was vague regarding what types of "other incentives" were permissible: "it is not entirely clear if such 'other incentives' include 'refunds,' 'rebates,' and 'discounts.'" *Id.* Because of this vagueness, and because Section 399-zzz states that "every violation" of the statute constituted a deceptive act and practice, the *Manship* court held that the statute was not narrowly tailored: "Simply stated, this blanket penalty, coupled with the vague language 'credit or other incentive,' could unnecessarily prohibit non-misleading, accurate speech." *Id.*

For the same reasons discussed in *Manship*, this Court should hold that Section § 399-zzz is not narrowly tailored to the State's interests. The statute broadly classifies "every violation" as a deceptive practice—even truthful, non-misleading speech like TD Bank's paper statement fee. And TD Bank would be left to guess at what sort of lawful "incentives" it could provide, thus discouraging lawful activity. As a result, even businesses like TD Bank that fully and accurately disclose their fees would be forced to either forego lawful activity or risk somehow committing a "deceptive act or practice." NY G.B.L. § 399-zzz(2). The statute thus "burden[s] substantially more speech than necessary to further [the state's] legitimate interests." *Centro de law Comunidad Hispana de Locust Valley*, 868 F.3d at 115.

For all of the reasons stated above, this Court should join the Northern District of New York in holding that "Section 399-zzz violates the First Amendment and is therefore deemed unconstitutional." *Manship*, 2021 WL 981587, at *10.

## III.    Plaintiff has not pleaded a violation of Section 349.

Even if the NBA did not preempt Section 399-zzz and even if the statute survived First Amendment scrutiny, Plaintiff still fails to plead a claim because (1) Plaintiff has not pleaded a Section 399-zzz violation, and (2) Plaintiff has not otherwise pleaded a Section 349 claim.

### A.    Plaintiff has not pleaded a violation of Section 399-zzz.

Plaintiff failed to plead a violation of Section 399-zzz because that section does not apply to the Bank's monthly statements. Section 399-zzz prohibits certain persons and entities only from "charg[ing] a consumer an additional rate or fee . . . *associated with payment on an account* when the consumer chooses to . . . receive a paper *billing statement*." NY G.B.L. § 399-zzz(1) (emphasis added). The legislation was enacted to spare consumers who felt more comfortable with payment by mail or without internet access from having to pay a fee to be able to pay their bills. Compl. ¶ 21 (recognizing that "those who prefer or are limited to doing business in the traditional receipt

of paper bills" should not have to pay an additional fee); *see id* ¶ 20. There is no indication that the Legislature intended the statute to apply to checking account statements—which are not bills. *Rosenberg v. Triborough Bridge & Tunnel Auth.*, 2021 WL 980744, at *3-5 (S.D.N.Y. Mar. 16, 2021) (holding that monthly account statements are not "billing statements").

The Bank's monthly account statements are not "billing statements." *Id.* A billing statement is "[a] printed or written statement listing goods or services supplied *and the amount of money owed*; an invoice." *Bill*, Oxford English Dictionary, https://www.oed.com/dictionary/bill_n3?tab=meaning_and_use#20616222 (emphasis added). Consistent with this meaning, the New York legislature uses the term "billing statement" to refer to cable bills (N.Y. Pub. Serv. Law § 224-b), telephone bills (N.Y. G.B.L. § 399-zz), and credit card/loan bills (N.Y. Pers. Prop. Law § 413). Bank account statements, by contrast, reflect debits and credits to a customer's account, including electronic deposits and payments, checks paid, daily balances, and the fees charged on the account. Compl. ¶ 36; *see Statement of Account*, Black's Law Dictionary (12th ed. 2024) ("A report issued periodically (usu. monthly) by a bank to a customer, providing certain information on the customer's account, including the checks drawn and cleared, deposits made, charges debited, and the account balance – Also termed *bank statement*."). As such, account statements are not bills reflecting amounts due and owing; rather, they are a retrospective accounting of Plaintiff's transactions and balances. This is not what the Legislature contemplated when it sought to protect consumers who prefer to receive "paper bills." *See Rosenberg*, 2021 WL 980744, at *4-5 (examining legislative history of Section 399-zzz and

concluding that the law was only "intended to reach businesses that charge fees to send paper bills" and not account statements because "[n]o payment is required upon receiving" such statements).[8]

This conclusion is buttressed by the statute's use of the phrase "*payment on an account*." This requirement necessarily presumes that there is some outstanding amount due for services. The need for an outstanding amount due is consistent with Section 399-zzz's emergence from NY G.B.L. § 702. *See* New York Bill Jacket, 2010 S.B. 7296, Ch. 556 ("This legislation would expand upon the provisions of Section 702 of the General Business Law . . . .") (Senator Peralta Sponsor's Memo). Section 702 provides, "[N]o creditor shall charge a consumer an additional rate or fee *associated with payment on an account* when the consumer chooses to pay by United States mail." (emphasis added). NY G.B.L. § 702. Section 702 presupposes an open balance on an account that the consumer would pay by mail; *i.e.*, "payment on an account." Otherwise, there would be nothing to pay by mail. The substantive expansion of Section 702 worked by Section 399-zzz is to make it a violation to charge for paper billing statements. But both statutes include the identical requirement of an additional fee being "associated with payment on an account," and there is no reason to think these identical phrases in the two statutes have different meanings.

Finally, the notion that a bank's checking account statement is equivalent to a *bill* for amounts owed is at odds with the nature of the bank/depositor relationship. As several courts have recognized, "[t]he deposit establishes a debtor-creditor relationship between the bank and the depositor in which the former becomes indebted to the latter for the amount of the deposit." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 328 (S.D.N.Y. 2010); *see also In re Interborough Consol.*

---

[8] *Manship* rejected this argument, reasoning that a "bill" is an itemized account of "services performed" and that account statements outline the Bank's services. 2021 WL 981587, at *12. But this overlooks the crucial consideration identified in *Rosenberg*—namely, that a bill *seeks payment of an outstanding amount*.  2021 WL 980744, at *5. This Court should follow *Rosenberg*.

*Corp.*, 288 F. 334, 347 (2d Cir. 1923) ("On a general deposit of money in a bank to the credit of the depositor, to be repaid on demand, . . . the relation of debtor and creditor is created—the bank becoming the debtor to the depositor."); *Reichling v. Cont'l Bank*, 813 F. Supp. 197, 198 (E.D.N.Y. 1993). TD Bank is the debtor and Plaintiff is the creditor, not vice versa. Thus, Section 399-zzz simply does not apply to Plaintiff's checking account statements.

B.    **Plaintiff has not pleaded a separate violation of Section 349.**

Plaintiff does not assert a Section 349 claim untethered to an alleged violation of Section 399-zzz. *See* Compl. ¶¶ 49-55. Because Plaintiff does not allege any other basis for a Section 349 claim, Plaintiff's Section 349 claim necessarily fails without an underlying violation of Section 399-zzz. *See Rosenberg*, 2021 WL 980744, at *5. To state a claim under Section 349, a plaintiff must allege that the defendant's conduct was: (1) consumer oriented; (2) materially deceptive or misleading; and (3) resulting injury. *Telesco v. Starbucks Corp.*, 682 F. Supp. 3d 397, 403 (S.D.N.Y. 2023) (dismissing § 349 claim where alleged conduct was not materially misleading). Here, Plaintiff has not plausibly alleged any TD Bank conduct that was misleading in any way. Plaintiff acknowledges that his monthly account statements (and the Bank's Fee Schedule) disclose the $3.00 fee that he challenges. Compl. ¶¶ 4, 10. Indeed, as described above, the governing account agreement itself also discloses the fee. Exhibit A, at 13. There is nothing deceptive about TD Bank's paper statement fee, and Plaintiff does not allege otherwise. Thus, Plaintiff has not, and cannot, allege an independent claim under Section 349. *See Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227 (S.D.N.Y. 2011) ("There can be no claim for deceptive acts or practices . . . when the alleged deceptive practice was fully disclosed.") (quotation marks omitted).

## CONCLUSION

Plaintiff's claim under Section 349 fails for multiple reasons, including because Section 399-zzz is preempted as applied to TD Bank, violates the First Amendment, and does not apply to the paper statement fees at issue here. Plaintiff's Complaint should be dismissed with prejudice.

Dated:  July 14, 2025

Respectfully submitted,

/s/ Mark B. Rosen
Mark B. Rosen
PIERCE ATWOOD LLP
One New Hampshire Avenue, Suite 350
Portsmouth, NH 03801
Tel.: (603) 433-6300
Fax: (603) 433-6372
mrosen@pierceatwood.com

Lucus A. Ritchie
(*pro hac vice* motion pending)
PIERCE ATWOOD LLP
254 Commercial Street
Portland, ME 04101
Tel:  (207) 791-1342
Fax: (207) 791-1350
lritchie@peirceatwood.com

*Attorneys for Defendant TD Bank, N.A.*

## LOCAL RULE 7.1(C) CERTIFICATION

I hereby certify that the length of this memorandum of law does not exceed 8,750 words and thus complies with the word-count limitations stated in Local Rule 7.1(c). The memorandum of law contains 7,201 words, not including the caption, index, table of contents, table of authorities, signature blocks, and the required certificates.

/s/ Mark B. Rosen
Mark B. Rosen

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2025, I electronically filed the foregoing document using the Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mark B. Rosen
Mark B. Rosen