UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA HASTINGS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   v.<br><br>TD BANK, N.A.,<br><br>      Defendant. | **MEMORANDUM & ORDER**<br>25-CV-02336 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

  Plaintiff Joshua Hastings brings this putative consumer protection class action against Defendant TD Bank, N.A., alleging that Defendant's $3 monthly fee for paper account statements violates New York General Business Law ("NY GBL") Sections 399-zzz and 349. *See* ECF No. 1 (Complaint).[1] Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* ECF No. 18 (Motion to Dismiss). For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND[2]

  Plaintiff, a citizen of New York, has maintained a checking account with TD Bank since at least 2024, and during that time, TD Bank has charged him a $3 monthly fee for paper statements. ECF No. 1 ¶ 10. He alleges that this fee violates Section 399-zzz of the NY GBL,

---

[1]   Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2]   The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

which prohibits charging paper statement fees in connection with billing statements in certain circumstances, and further alleges that Defendant therefore engaged in a deceptive act or practice under Section 349 of the NY GBL. *See id.* ¶¶ 51–53.

Section 399-zzz provides:

> (1) Subject to federal law and regulation, no person, partnership, corporation, association or other business entity shall charge a consumer an additional rate or fee or a differential in the rate or fee associated with payment on an account when the consumer chooses to pay by United States mail or receive a paper billing statement. This subdivision shall not be construed to prohibit a person, partnership, corporation, association or other business entity from offering consumers *a credit or other incentive* to elect a specific payment or billing option.
>
> (2) Every violation of this section shall be deemed a deceptive act and practice subject to enforcement under article twenty-two-A of this chapter.

NY GBL § 399-zzz (emphasis added). The parties acknowledge that a case from the Northern District of New York, *Manship v. TD Bank, N.A.*, involved similar facts and identical issues to those presented here. *See* No. 20-cv-0329, 2021 WL 981587 (N.D.N.Y. Mar. 16, 2021); ECF No. 18-1 at 4 (Defendant's Memorandum of Law); ECF No. 21 at 1 (Plaintiff's Opposition).

Defendant moves to dismiss on three grounds: (1) Plaintiff's Section 399-zzz claim is preempted by the National Bank Act ("NBA"); (2) Section 399-zzz violates the First Amendment; and (3) even if Plaintiff's claim is not preempted, and even if Section 399-zzz survives First Amendment scrutiny, Plaintiff fails to plead an actionable claim because he did not plead a violation of Section 399-zzz and a separate violation of Section 349. *See generally* ECF No. 18-1.

In opposition, Plaintiff advances three arguments: (1) Section 399-zzz is not preempted by the NBA because the New York State legislature acted pursuant to its police powers; (2) Section 399-zzz is constitutional, and even if the portion of the statute referring to "a

credit and other incentive" is unconstitutional, the Court should sever that portion and leave the remainder intact under the doctrine of severability; and (3) Defendant's account statements fall within the scope of Section 399-zzz and therefore subject Defendant to liability under Section 349. *See generally* ECF No. 21.

## LEGAL STANDARD

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff['s] complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).

## DISCUSSION

Having found Chief Judge Suddaby's analysis in *Manship* thorough and persuasive, the Court adopts *Manship*'s conclusion and most of its analysis, except for the portion addressing the Section 399 violation.[3] *See Manship*, 2021 WL 981587. The Court also addresses the parties'

---

[3] In *Manship*, Defendant argued that Section 399-zzz (1) does not apply to national banks and (2) does not apply to its paper statement fee policy to support its argument regarding the Section 349 violation. *Manship*, 2021 WL 981587, at *11. Judge Suddaby rejected those arguments based on the statute's text and legislative intent. *Id.* at 11–12. Because I have concluded that Section 399-zzz is unconstitutional, *see infra*, I need not reach the question of whether the statute applies to national banks or to Defendant's paper statement fee policy. That question would not alter the conclusion that Plaintiff fails to state a Section 349 claim.

3

disagreements with the *Manship* decision and arguments that were not raised in *Manship* or otherwise addressed by Judge Suddaby.

I.  **Plaintiff's Claim is Not Preempted by the NBA**

The Supreme Court has held that federally chartered banks "are subject to state laws of general application in their daily business" as long as such laws do not conflict with "the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). States are permitted to regulate the activities of national banks where such regulation "does not prevent or significantly interfere" with the national bank's exercise of its powers. *See id.* at 12; *see also Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). Accordingly, in a preemption analysis, a court must determine what banking powers are at issue, and whether state law "prevent[s] or significantly interfere[s]" with the exercise of those powers. *Barnett Bank*, 517 U.S. at 33.

Applying that framework, Judge Suddaby held that Section 399-zzz is not preempted by the NBA or its accompanying regulations from the federal Office of the Comptroller of the Currency ("OCC"). *Manship*, 2021 WL 981587, at *5. He first identified the relevant banking power at issue in Section 399-zzz as the defendant bank's "ability to charge a non-interest fee for its services," and noted that a national bank can exercise such power "only when [the fees] relate to sound banking judgment and safe banking principles." *Id.* at *6–7; 12 C.F.R. § 7.4002(b). He went on to find that Defendant's paper statement fee "does not involve [a] banking concept or principle," and thus does not pertain to Defendant's banking practices and is therefore distinct from non-interest banking fees, without even reaching the question of whether charging paper statement fees amounts to "sound banking judgment." *Manship*, 2021 WL 981587, at *7. The *Manship* court further reasoned that Section 399-zzz does not "significantly interfere with" the

bank's power to charge its customers for paper statements because Defendant could "circumvent the statute by changing its description from a 'fee' to a 'credit.'" *Id.*

Accordingly, Judge Suddaby determined that Section 399-zzz is not preempted by the NBA or the OCC's regulations of national banks. *Id.* at 7. The Court agrees.

Defendant contends that the preemption analysis in *Manship* rests on two erroneous premises. ECF No. 18-1 at 16–17. First, Defendant argues that the court placed undue weight on the fact that Section 399-zzz is a law of general applicability. *Id.* at 16. Second, Defendant emphasizes that any inquiry into whether a bank's non-interest fees reflect sound banking judgment and safe banking principles falls exclusively within the OCC's supervisory powers. *Id.* at 16–17.

I find these arguments to be unpersuasive. First, Defendant does not sufficiently explain how paper statement fees implicate banking concepts or principles and how they would "significantly interfere" with its banking power "to charge a non-interest fee for its services." *Manship*, 2021 WL 981587, at *6–7. The cases Defendant cites are of little help because they either do not concern the banking power to charge a non-interest fee, or the non-interest fees at issue in those cases involve banking concepts. *See Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 735 (1996) (power to charge interest); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 607 (D.S.C. 2015) (power to receive deposits); *New Mexico v. Cap. One Bank (USA) N.A.*, 980 F. Supp. 2d 1314, 1324 (D.N.M. 2013) (lending power); *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1196 (11th Cir. 2011) (check-cashing service fee); *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 284 (6th Cir. 2009) (service fees for the garnishment process that requires banks to freeze accounts); *Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 555 (9th Cir. 2002) (ATM fees); *Mann v. TD Bank, N.A.*, No. 09-cv-1062, 2009 WL 3818128, at

*5 (D.N.J. Nov. 12, 2009) (gift card dormancy fees authorized by OCC). Second, Defendant's focus on "sound banking judgment" is misplaced because *Manship* did not treat paper statement fees as a banking decision and therefore did not reach that issue. *Manship*, 2021 WL 981587, at 7. Further, neither Judge Suddaby nor this Court has identified, nor has Defendant provided, any OCC guidance or interpretation regarding paper statement fees. *Id.* at *6.

Accordingly, I adopt Judge Suddaby's well-reasoned analysis and conclusion on the preemption issue.

## II. Section 399-zzz Violates Defendant's First Amendment Rights

### A. Section 399-zzz Regulates Speech

The Court now turns to Defendant's First Amendment argument. Defendant argues that Section 399-zzz regulates how it communicates fees and prices, *i.e.*, speech, *see* ECF No. 18-1 at 18–19, while Plaintiff argues that the statute regulates only conduct, *see* ECF No. 21 at 15.

In *Manship*, the court concluded that Section 399-zzz regulates speech regarding "how businesses can communicate their fees," rather than mere conduct. *Manship*, 2021 WL 981587, at *8. Although Section 399-zzz "prohibits businesses from charging consumers for receiving a paper statement," it simultaneously allows them to offer a credit or other incentive to customers who opt for electronic statements. *Id.* That structure "regulates the communication of fees" because it permits Defendant to deprive one class of customers (*i.e.*, those who receive paper statements) of a credit given to another class of customers (*i.e.*, those who receive paperless statements), "while restricting Defendant from labeling this deprivation on the credit as a 'fee.'" *Id.*

Plaintiff argues that the Court should not adopt Judge Suddaby's interpretation of the statute because there may be "another plausible reading of the statute [that] would render it

6

constitutional." ECF No. 21 at 16; *see Golb v. Attorney General of the State of N.Y.*, 870 F.3d 89, 103 (2d Cir. 2017) ("A statute . . . is not unconstitutional on its face because a single possible interpretation of it is unconstitutional.").

          i.      "Credit"

First, Plaintiff contends that the court in *Manship* erred by treating the language "offering consumers a credit" as simply the inverse of "charg[ing] consumer[s] [a] fee." ECF No. 21 at 17. He alleges that "a credit" in this context means "money that customers can only spend to offset a specific future purchase," essentially a "gift card that cannot be used anywhere else." *Id.* Plaintiff further contends that a credit from Defendant would be useful only if customers "were subject to one of the [monthly maintenance] fees identified on [Defendant's] Personal Fee Schedule." *Id.* at 18.

The Court disagrees. "[I]n finance, [a credit means] an agreement to provide money, goods, or services in exchange for a borrower's promise to pay at a future date." *EBS Dealing Res., Inc. v. Intercontinental Exch., Inc.*, 379 F. Supp. 2d 521, 530 (S.D.N.Y. 2005) (quoting THE MCGRAW–HILL DICTIONARY OF INTERNATIONAL TRADE AND FINANCE, 96 (McGraw–Hill 1994)); *see also Credit*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "credits" as "the availability of funds either from a financial institution or under a letter of credit"). Neither of these definitions suggests that the value of a credit is limited to "a specific future purchase" or "a gift card," as Plaintiff suggests. Further, the only materials before the Court are the Complaint, ECF No. 1, the Personal Deposit Account Agreement, ECF No. 18-3, and the Personal Fee Schedule, ECF No. 18-4. None of those documents indicates that a credit from Defendant could

7

be used only to offset monthly maintenance fees, as Plaintiff now argues for the first time in his opposition.[4] *See* ECF No. 21 at 18.

          ii.      <u>"Other Incentive"</u>

Plaintiff next invokes the legal canons of construction of *noscitur a sociis* and *ejusdem generis*[5] to argue that "other incentive" means only "something like a free month of an otherwise paid monthly service." ECF No. 21 at 18. That argument is unpersuasive because "those canons generally apply to 'lists' or 'strings' of words, not to a pairing of a specific word and a more general word," as is the case here. *Santoro v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-9782, 2020 WL 6586630, at *5 (S.D.N.Y. Nov. 9, 2020); *see e.g.*, *Yates v. United States*, 574 U.S. 528, 544–45 (2015) (applying *noscitur a sociis* and *ejusdem generis* canons to list of nouns); *see United States v. Lauderdale County*, 914 F.3d 960, 967 (5th Cir. 2019) (declining to apply *noscitur a sociis* because the phrase "does not contain a string of terms; rather, it contains two independent clauses separated by a disjunctive 'or.'"). Here, the canons of *noscitur a sociis* and *ejusdem generis* do not apply because "a credit or other incentive" does not contain a string of terms. The Court therefore declines to adopt Plaintiff's reading of "other incentive."

---

[4]    The Court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Grant v. County of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013).

[5]    Under the canon of *noscitur a sociis* – meaning "it is known from its associates" – "words grouped in a list should be given related meaning." *Dole v. United States Steelworkers of America*, 494 U.S. 26, 36 (1990). Put another way, "words employed in a statute are construed in connection with, and their meaning is ascertained by reference to the words and phrases with which they are associated." *See* N.Y. Stat. § 239. Under the canon of *ejusdem generis* – meaning "of the same kind" – the scope of a word is limited by its surrounding terms. *Id.* Thus, "when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008).

### B. Section 399-zzz Does not Survive Intermediate Scrutiny

Having concluded that Section 399-zzz regulates speech, the Court next considers whether it passes muster under the First Amendment. Regulations of commercial speech are generally subject to intermediate scrutiny. *See United States v. Caronia*, 703 F.3d 149, 163 (2d Cir. 2012). The Supreme Court has established a four-part test for determining whether regulations of commercial speech are consistent with the First Amendment:

> At the outset, we must determine [1] whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask [2] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980); *Alexander v. Cahill*, 598 F.3d 79, 88 (2d Cir. 2010).

Applying this four-part test, Judge Suddaby concluded that Section 399-zzz violates the First Amendment. *See Manship*, 2021 WL 981587, at *9–10. The court first determined that the government's interest in consumer protection is substantial. *Id.* at *10. But then it went on to conclude that Section 399-zzz does not directly advance that interest because the statute prohibits fees for customers who choose paper statements but permits providing "credits" or "incentives" to customers who choose electronic statements, a distinction that has only "a *de minimis* effect" on consumer choice. *Id.* The court further found that the statute is not narrowly tailored because the scope of "other incentive" is unclear, and together with a blanket penalty for "[e]very violation of this section . . . ," the statute "could unnecessarily prohibit non-misleading, accurate speech." *Id.*

I agree with Judge Suddaby's conclusion regarding the statute's "*de minimis* effect." In essence, Section 399-zzz prohibits businesses from setting the default position as paperless statements and charging customers a fee when they affirmatively choose paper statements, which is what Defendant does. The statute, instead, permits businesses to set the default position as paper statements, and to give a credit or other incentive to customers who affirmatively choose paperless statements. The two approaches have little practical difference. *See Santoro*, 2020 WL 6586630, at *7 ("[T]here might not be a great degree of practical difference – prohibiting a fee and allowing an incentive may be opposite sides of the same coin[.]"); *see also* N.Y. Bill Jacket, L. 2010 S.B. 7296, ch. 556 at 16 ("While there is certainly a formal distinction between prohibiting an additional fee and permitting a credit, it is not clear that there is a great degree of practical difference."). Therefore, Section 399-zzz does not directly advance the government's interest and does not survive intermediate scrutiny.

### C.     Severability

Next, Plaintiff notes that the *Manship* court failed to apply the doctrine of severability to sever the unconstitutional part of the statute, *i.e.*, the reference to "a credit or other incentive," and leave the remainder intact. ECF No. 21 at 23–25. Severability of a state statute is a question of state law. *See Leavitt v. Jane L.*, 518 U.S. 137, 139 (1996). The case cited by Plaintiff, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, which analyzes the severability of a federal statute under federal law, is therefore inapplicable. *See* 591 U.S. 610, 625 (2020).

After finding a statute unconstitutional, a court "must determine whether the invalid portions of the statute can be severed from the valid portions so the remainder of the statute can be preserved." *Nat'l Advert. Co. v. Town of Niagara*, 942 F.2d 145, 148 (2d Cir. 1991). In New York, severability turns on "whether the Legislature would have wished the statute to be

enforced with the invalid part exscinded, or rejected altogether." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 88 (2d Cir. 2015); *see also Gen. Elec. Co. v. New York State Dep't of Lab.,* 936 F.2d 1448, 1460 (2d Cir. 1991) ("[T]he intent of the state legislature in originally enacting the statute is the touchstone in determining whether the remainder of the statute is severable and may be spared from the unconstitutional taint."); *CWM Chem. Servs., L.L.C. v. Roth*, 6 N.Y.3d 410, 423 (2006) (noting severability analysis "requires first an examination of the statute and its legislative history to determine the legislative intent and what the purposes of the law were"). "[S]everance is inappropriate when the valid and invalid provisions are so intertwined that excision of the invalid provisions would leave a regulatory scheme that the legislature never intended." *Nat'l Advert.*, 942 F.2d at 148; *see also Crown Castle Fiber LLC v. City of Rochester, New York*, 623 F. Supp. 3d 165, 174 (W.D.N.Y. 2022).

Here, severance of the "credit and other incentive" provision from the remainder of Section 399-zzz is inappropriate. The statute itself both prohibits paper statement fees and expressly permits credits or incentives for customers who choose paperless statements. The legislative history also recognizes the second purpose. The bill's primary sponsor, Senator Peralta, noted that the "legislation does *not* prohibit a company from providing incentives for *opt-in paperless billing and bill payment*, a clear alternative with positive environmental impact." N.Y. Bill Jacket, L. 2010, ch. 556 at 5 (emphases added). Severing the "credit and other incentive" provision would therefore undermine the statute's original text and legislative history.

For all of these reasons, the Court agrees with the court in *Manship* and concludes that Section 399-zzz violates the First Amendment and is therefore unconstitutional.

11

### III. Plaintiff Fails to State a Claim under Section 349

Section 349 "makes unlawful '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state,'" *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (quoting NY GBL § 349), and "provides a private right of action to 'any person who has been injured by reason of any violation of th[e] section,'" *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *13 (S.D.N.Y. Aug. 12, 2016) (quoting NY GBL § 349(h)). To establish a violation of Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

The Court agrees with the *Manship* court's conclusion that Plaintiff has failed to plead a separate violation of Section 349, but only insofar as "Plaintiff has failed to state a claim for a deceptive act and practice because Section 399-zzz unconstitutionally infringes on Defendant's First Amendment rights." *Manship*, 2021 WL 981587, at *12.

### IV. Leave to Amend

In his Opposition, Plaintiff requests leave to amend "if the Court grants any aspect of Defendant's motion." ECF No. 21 at 31. Although the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," here, the Court declines to grant Plaintiff leave to amend. *See Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).

An opportunity to amend is not required where, as here, "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). "Where granting leave to amend is unlikely to be

12

productive . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, because the Court has determined that Section 399-zzz unconstitutionally infringes on Defendant's First Amendment rights, Plaintiff cannot state a claim under the statute, and leave to amend would be futile. *See Delo v. Fordham Univ.*, No. 24-cv-6025, 2025 WL 2166087, at *8 (S.D.N.Y. June 2, 2025). Further, Plaintiff neither identifies any additional factual allegations nor explains how an amendment would remedy the deficiencies in the Complaint. *See* ECF No. 21 at 31. The Court therefore dismisses Plaintiff's Complaint with prejudice. *See WC Capital Management, LLC v. UBS Securities, LLC*, 711 F.3d 322, 334 (2d Cir. 2013) (affirming district court's denial of request for leave to amend where plaintiff "conclusorily requested [such] leave . . . in two sentences in its opposition [brief], without specifying what additional factual allegations it would include if leave were granted, or how an amended complaint would cure the deficiencies the District Court identified in its original complaint").

\*   \*   \*

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss, ECF No. 18, and DISMISSES Plaintiff's Complaint in its entirety with prejudice pursuant to Rule 12(b)(6). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
　HECTOR GONZALEZ
　United States District Judge

Dated: Brooklyn, New York
　　　February 27, 2026